THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
IVORY JOHNSON, Defendant-Appellant.

Third District    No. 80-603

Opinion filed June 10, 1981.—Modified on denial of rehearing August 18, 1981.

Robert Agostinelli and Charles W. Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Ivory Johnson, appeals from his conviction for burglary following a jury trial in the Circuit Court of Peoria County. He was sentenced to five years' imprisonment to be served consecutively with the sentence in case No. 78-CF-1363, for which the defendant was serving parole at the time of the instant offense.

The defendant advances four issues for review: (1) whether the circuit court erred in failing to advise the defendant of his rights concerning counsel's purported conflict of interest that arose as a result of the defendant's specific allegations of ineffective assistance of counsel; (2) whether defense counsel ineffectively represented the defendant when counsel failed to move to exclude evidence of the defendant's prior burglary conviction that the State introduced for impeachment; (3) whether the circuit court erred in not instructing the jury on the definition of theft and, thus, denied the defendant his rights to due process of law and a fair jury trial; and (4) whether the cause must be remanded for resentencing because the circuit court failed to specifically articulate its reasons for imposing a consecutive sentence.

The evidence tended to show that on July 26, 1980, at approximately 5 a.m., the defendant entered the dwelling of Kent and Lynn Folkerts,

without their authority, and removed a jewelry box from their bedroom. Kent Folkerts noticed the defendant leaving the bedroom and ordered him to drop the box and get out of his house. The defendant gave the box to Folkerts and left the house. The defense argued that because of the defendant's state of intoxication, he was unable to form the requisite *mens rea* element for the offense of burglary.

At the conclusion of the State's case in chief, the defendant submitted a "petition for a fair trial" to the circuit court. The petition, signed by the defendant and 23 other prisoners in the Peoria county jail, alleged that because of defense counsel's ineptitude, the defendant would be denied a fair trial. Specifically, the petition charged (1) that defense counsel spent less than 30 minutes with the defendant preparing his defense and (2) that he badgered a defense witness, Angie Booker, in an effort to discourage her testimony in the defendant's behalf. The defendant's attorney, the public defender, responded to the charges, stating he had interviewed the defendant at the Peoria county jail, had taken copious notes of the conversation, and had discussed the case with him on at least two other occasions. Second, counsel admitted that he subjected Booker to "stiff questioning" to prepare for the rigors of the State's cross-examination and not to discourage her from testifying. In fact, Booker did testify in the defendant's case in chief. In considering the petition, the court declared that in light of the straightforward and "very simple" evidence, a substantial amount of investigation by defense counsel was unnecessary, and rigorous questioning of defense witnesses prepared the witnesses for cross-examination and thus served the defendant's best interests. Accordingly, the court denied the petition.

The defendant contends that the circuit court's response to the petition was insufficient. The defendant submits that when he attacked the adequacy of defense counsel's representation, a conflict of interest arose. The petition created a hostility of interests by forcing counsel to argue his own incompetence and thus, in effect, pitted counsel against himself. According to the defendant, the circuit court should have advised the defendant of the conflict of interest so as to allow the defendant to knowingly and intelligently waive the conflict or to eliminate it by withdrawal of counsel. This failure allegedly deprived the defendant of effective assistance of counsel.

■■ In order to successfully establish incompetence of counsel, a defendant must demonstrate actual incompetence, as manifested in the performance of his or her duties as trial attorney, which resulted in substantial prejudice to the defendant without which the outcome would probably have been different. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) The degree of competency must be of such a low caliber to reduce the proceeding to a farce and amount to virtually no representation.

(*People v. Stanley* (1972), 50 Ill. 2d 320, 278 N.E.2d 792.) Accordingly, the alleged incompetency must be founded on more than the client's disagreement with counsel's choice of trial tactics or judgment. (*People v. Newell* (1971), 48 Ill. 2d 382, 268 N.E.2d 17.) Likewise, substantial prejudice must be shown by more than mere speculation or conjecture on the outcome of the trial had the representation been more to the defendant's liking. (*People v. Hills* (1980), 78 Ill. 2d 500, 401 N.E.2d 523.) Here, the defendant's unsubstantiated allegations pertain to nothing more than matters going to the exercise of counsel's trial judgment and discretion and are insufficient to establish incompetency of counsel. (*People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630; *People v. Dean* (1964), 31 Ill. 2d 214, 201 N.E.2d 405.) In fact, defense counsel rebutted the first allegation that he spent an insufficient amount of time with the defendant in order to prepare his defense. As for the allegation that counsel badgered a defense witness, we competely disagree with the defendant's characterization. An experienced trial counsel often subjects potential witnesses to vigorous questioning to prepare them for the State's cross-examination. Obviously, no incompetence occurred because the witness did testify and the defendant does not point to any potentially favorable testimony which his trial counsel failed to adduce.

In the case at bar, however, the defendant attempts to circumvent this standard by alleging ineffective assistance of counsel in a conflict of interest context. Relying upon our recent decision of *People v. Fields* (1980), 88 Ill. App. 3d 821, 410 N.E.2d 1178, the defendant advances the argument that where a defendant merely propounds specific allegations of defense counsel's incompetence and counsel rebuts the charges, a *per se* conflict of interest arises. (See, *e.g., People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441.) We disagree with the defendant's contention.

The Illinois Supreme Court has recognized that a conflict of interest may arise from a defendant's allegations of incompetence. (*People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E.2d 169.) In *Smith*, the alleged conflict occurred at a post-conviction hearing, but the conflict may arise at a post-trial hearing (*People v. Norris* (1977), 46 Ill. App. 3d 536, 361 N.E.2d 105), or even during trial.

■■ However, we do not believe that the supreme court intended *Smith* and its progeny to be wielded about as a talisman to find a conflict of interest whenever a defendant makes specific allegations of incompetence thus calling upon counsel to argue his own ineffectiveness. This is especially the case where the allegations of incompetence are so blatantly spurious as in the case at bar. We see no reason for granting relief to a defendant complaining of a conflict of interest based upon incompetence of counsel where the alleged incompetence constituted nothing more than a disagreement between counsel and the defendant on the choice of trial

tactics. Moreover, by refusing to recognize a conflict of interest in such situations, we will reduce the petty disputes concerning the smallest differences of opinion and promote cooperation between counsel and client without endangering the defendant's rights to competent and effective assistance of counsel. (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14.) Whether counsel is called upon to argue his own ineffectiveness (*People v. Fields* (1980), 88 Ill. App. 3d 821, 410 N.E.2d 1178) is not determinative of a conflict of interest based upon defense counsel's incompetence. Instead, the underlying allegation of incompetence determines whether an actual conflict of interest exists. Thus, we hold that where specific allegations of incompetence consist of disputes over trial tactics and are presented during trial, no conflict of interest arises. See also *People v. Gustafson* (1979), 75 Ill. App. 3d 497, 393 N.E.2d 1315.

The second contention raised by the defendant is whether he was denied effective assistance of counsel when the public defender failed (1) to move to exclude evidence of the defendant's prior conviction for burglary and (2) to request an instruction informing the jury that the convictions may be used only for impeaching the defendant's credibility.

The defendant, testifying in his own defense, stated on direct examination that he had been convicted of theft on January 18 and August 20, 1978, and of burglary on October 23, 1978. On the State's rebuttal, the jury was again informed of these three prior convictions. Defense counsel also failed to request an instruction on the limited use of the convictions (see IPI Criminal No. 3.13), although the court did orally admonish the jury of this fact when the evidence was first admitted.

■■ To successfully establish ineffective assistance of counsel, the defendant must demonstrate actual incompetence which substantially prejudiced the defendant. (*People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416.) Accordingly, where counsel could have acted but he or she concluded such action would have been futile, no ineffective assistance of counsel results because the outcome would have remained unchanged. (*People v. Elliott* (1977), 46 Ill. App. 3d 887, 361 N.E.2d 852.) In the case at bar, therefore, the defendant must demonstrate that a motion *in limine* to exclude the evidence of the burglary conviction would have been successful and that the limiting instruction would have changed the outcome of the trial.

In the case of *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, the Illinois Supreme Court, per Justice Schaefer, adopted then proposed Rule 609 of the Federal Rules of Evidence. That rule admits evidence of prior convictions for impeachment if the convictions were felony types or veracity related and unless, in either case, the convictions's probative value was substantially exceeded by its prejudicial

effect. The *Montgomery* court set forth the following four-part test to determine whether the probative value for impeachment was substantially outweighed by prejudice to the defendant: (1) whether the crime was veracity related; (2) the proximity of the prior conviction to the instant offense; (3) subsequent history of the defendant as it reflects the extent of his rehabilitation; and (4) the similarity between the past conviction and the instant offense. Using the *Montgomery* standard, the defendant argues that had defense counsel moved *in limine* to exclude the evidence of the 1978 burglary conviction, the circuit court would have found the evidence too prejudicial because of its similarity to the instant burglary offense and because the two 1978 convictions fully established a basis to impeach the defendant's credibility.

■■ On the contrary, we find the evidence of the 1978 burglary conviction would have been admitted according to *Montgomery*, had defense counsel moved *in limine* to exclude it. First, the burglary was a veracity-related crime as defined in *People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563. Second, the burglary offense was the most recent conviction, thus increasing the likelihood of present testimonial deceit. Third, because the burglary conviction followed the two previous convictions, that conviction rebuts the argument that correctional rehabilitation diminished the defendant's potential for testimonial deceit. The burglary conviction is identical to the instant offense, and such similarity is one element used to establish overwhelming prejudicial effect. (See *People v. Siebert* (1979), 72 Ill. App. 3d 895, 390 N.E.2d 1322.) Nevertheless, Illinois courts have not considered the fourth *Montgomery* factor conclusively prejudicial, for we have frequently admitted evidence of similar convictions for impeachment. (See, *e.g., People v. Sanders* (1974), 56 Ill. 2d 241, 306 N.E.2d 865, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3178.) *Siebert* is distinguishable from the instant case on the ground that the prior conviction there (possession of marijuana) was only marginally probative of the defendant's veracity. Here, the burglary conviction is directly related to his credibility.

■■ The defendant's second allegation of incompetency, that defense counsel should have requested an instruction informing the jury of the limited use of the prior convictions, asks counsel to perform a futile act. In light of the overwhelming evidence of the defendant's guilt, counsel's failure to request such an instruction would not have materially changed the outcome of the trial even though he had the right to request the instruction (Ill. Rev. Stat. 1979, ch. 110A, par. 451); thus, no ineffective assistance of counsel occurred. *People v. Elliott* (1977), 46 Ill. App. 3d 887, 361 N.E.2d 852.

The defendant next contends that because the circuit court failed to instruct the jury *sua sponte* on the definition of theft, the court denied the

defendant his right to a fair jury determination of his guilt or innocence of burglary. In response, the State claims the defendant waived the issue for purposes of appeal. We agree.

The law in Illinois is well established that the burden of preparing jury instructions is primarily on the parties and not on the court. (*People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513.) The failure to request an instruction at trial or in a post-trial motion results in waiver of the claimed error. (*People v. Gulliford* (1980), 86 Ill. App. 3d 237, 407 N.E.2d 1094.) However, in criminal cases the waiver rule will not prevent review of "substantial defects" in jury instructions "if the interests of justice require." (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c).) One application of the plain-error exception to the waiver rule is where the trial court fails to fully instruct the jury as to the legal definition of the offense charged. *People v. Stromblad* (1978), 74 Ill. 2d 35, 383 N.E.2d 969.

In the case at bar, the defendant claims that, by failing to instruct the jury *sua sponte* on the definition of theft, the jury did not receive the full definition of the offense of burglary. At trial, the jury received the following instruction: "To sustain the charge of [burglary], the State must prove the following propositions: * * * that the defendant did [knowingly enter the residence of Kent Folkerts] with intent to commit the crime of theft." (IPI Criminal No. 25.02.) No definition of theft was tendered by the defendant or ordered by the court.

To support his argument, the defendant refers to several situations where the court must define the crime within the offense charged. For example, in "attempt" cases, the substantive offense attempted must be defined. (*People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209.) Similarly, the Committee Notes to the felony murder (IPI Criminal No. 7.01) and conspiracy (IPI Criminal No. 6.03) instructions provide, respectively, that the felony being committed during the course of the murder, and the crime agreed to by the conspirators to be committed, must be defined for the jury.

■■ Nevertheless, where the crime charged within a burglary offense is theft, the established rule in Illinois requires no instruction defining theft. The rationale for this rule is that where terms employed in instructions are of general use and are not necessarily technical terms, they need not be defined in the absence of anything in the charge to obscure their meaning. (*People v. Monroe* (1975), 32 Ill. App. 3d 482, 335 N.E.2d 783.) In applying this rule, it has been held that insofar as theft is a simple word of common usage, an instruction defining the word "theft" is not required in a prosecution for burglary. (*People v. Browry* (1972), 8 Ill. App. 3d 599, 290 N.E.2d 650.) Moreover, we note that the Committee Notes to the burglary instruction (IPI Criminal No. 14.05) do not require the intended

felony or theft to be defined by instruction. Accordingly, the circuit court's failure to instruct the jury *sua sponte* on the definition of theft did not constitute plain error; thus, the defendant has waived consideration of this issue for purposes of appeal.

■■ Finally, the defendant alternatively requests that this court remand the cause for resentencing because the circuit court expressed no opinion concerning the finding necessary to impose consecutive sentences. Section 5—8—4(b) of the Unified Code of Corrections provides:

> "The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b).

In the case at bar, the circuit court stated it had considered the presentence report and noted the defendant's history of prior criminality (three misdemeanor and two felony convictions). The court further noted the defendant had been serving parole on another case at the time he committed the instant burglary. The court then imposed a 5-year term of imprisonment to be served consecutively to the above-mentioned sentence and declared:

> "The reason for the Court's order is his prior criminal activity, his record. He is only 20 years old and this is the 6th conviction that he has received in three years. He has no prior employment record. And this is an invasion of a person's home, invasion of a person's bedroom late at night and starting to remove property from that home."

The defendant argues that although these remarks explain the court's decision to impose a 5-year term of imprisonment, they do not satisfy the section 5—8—4(b) requirement that the court must be of the opinion that consecutive terms are necessary to protect the public from further criminal conduct by the defendant, and that the basis of such an opinion shall be set forth on the record. (*People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930; *People v. Gaston* (1980), 88 Ill. App. 3d 314, 410 N.E.2d 531.) In response, the State argues that the transcript leaves no doubt as to the court's opinion regarding the dangerousness of the defendant and its reasoning for imposing the consecutive sentencing. We agree.

For this court to accept the defendant's argument and require a sentencing court to incant the shibboleth of section 5—8—4(b) would result in promoting form over substance and squandering judicial resources. Situations will arise where a sentencing court must individually articulate its reasoning underlying the imposition of consecutive sen-

tences. (*People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930.) However, where such rationale is so patently obvious, as in the case at bar, we will not require a court to delineate separate reasoning to each sentencing decision. The record in the case at bar clearly indicates that the court believed that the defendant presented a danger to the public by reason of his history of past criminality. For this reason, the circuit court correctly imposed consecutive sentencing.

For the foregoing reasons, we affirm the judgment of conviction entered in the Circuit Court of Peoria County.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.