THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOE HICKS, Defendant-Appellant.

Second District   No. 2—86—0958

Opinion filed November 19, 1987.—Rehearing denied December 29, 1987.

Daniel J. Stohr, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of Elgin, and John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of Ottawa, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After a jury trial, defendant, Joe Hicks, was convicted of possession of incendiary devices (Ill. Rev. Stat. 1985, ch. 38, par. 20—2(a)), transportation of incendiary devices (Ill. Rev. Stat. 1985, ch. 38, par. 20—2(a)), and unlawful use of weapons (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(7)). He appeals, contending that he was denied (1) effective assistance of counsel because his trial counsel failed to present exculpatory expert testimony; (2) a fair trial because the jury instructions did not define the term "arson"; and (3) a fair trial because the prosecutor's closing argument improperly denigrated the burden of proof and discounted the defense of impossibility. We affirm.

On March 9, 1986, at approximately 2:30 a.m., Officer Nichols of the Bensenville police department was patrolling an industrial park when he observed defendant walking toward a car located in front of an office building. Defendant entered the car and drove it a few feet before Nichols ordered him to stop and get out of the car. Upon being asked what he was doing, defendant responded that he had stopped to urinate. Nichols checked the area and found no evidence of urination.

Officer Bloode discovered two bottles, one near the rear and an-

other approximately 100 feet from defendant's car, which were filled with gasoline. Each had a folded paper towel wick protruding from the bottle's neck. Bloode also observed a gasoline can, package of paper towels, pouring spout, and funnel in the hatchback area of defendant's car. Defendant's wallet contained two business cards with the addresses of the office buildings next to where he stopped his car.

At trial, the State presented the expert testimony of Jack Nowicki, a forensic chemist of the Illinois State police department. Nowicki performed a visual examination and gas chromatography test of liquid samples obtained from the two bottles and the gasoline can. Nowicki testified that, within a reasonable degree of scientific certainty, all three samples were regular leaded gasoline. Nowicki stated that commercial grade gasoline contains additives but that he did not determine which additives were present in the samples. Nowicki further testified that, in his opinion, the same manufacturer made the paper towels found in defendant's car and the paper towels used as wicks. Nowicki further stated that the wicked bottles of gasoline, commonly referred to as Molotov cocktails, were incendiary devices.

Defendant testified that the car he was driving belonged to a friend, and, because it had a faulty gasoline gauge, defendant carried a full, reserve gasoline can. Defendant further testified that he had driven into the industrial park to urinate because he was familiar with that area and that he was employed in the building in front of which he had parked. Testimony from other witnesses established that no fingerprints were found on either of the bottles, and defendant's hands did not smell of gasoline. Additionally, no matches, lighter or other ignition device were found in defendant's possession when he was arrested.

Defendant offered no instructions at the conference on instructions. While deliberating, the jurors sent the judge a note requesting definitions for the terms "transportation of incendiary device," "transportation," and "incendiary devices." The judge decided that no further instructions or definitions were necessary for those terms, and defendant was found guilty on all counts.

Defendant's post-trial motion alleged, *inter alia*, (1) ineffective assistance of counsel due to trial counsel's failure to call an exculpatory expert witness; (2) improper jury instructions; and (3) improper remarks made concerning the burden of proof during closing argument. In support of his motion, defendant submitted the affidavit of an expert witness which stated that he had conducted three types of tests on the liquid samples and concluded that the sample obtained from the gasoline can had an element in it which was not present in the

two bottle samples. Defendant's motion was denied, and this appeal followed.

■■ Defendant first contends that his counsel's failure to present exculpatory expert evidence in trial violated his sixth and fourteenth amendment rights to effective assistance of counsel. To establish ineffective assistance of counsel, defendant must demonstrate that his counsel committed errors so serious that, judged by an objective standard, his performance was incompetent, and that the errors caused prejudice to defendant without which there is a reasonable probability that the result of the proceedings would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68; *People v. Collins* (1985), 106 Ill. 2d 237, 273, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267; *People v. Jaffe* (1986), 145 Ill. App. 3d 840, 850, 493 N.E.2d 600.) We find that defendant has failed to sustain his burden in this case.

■■ ■ There is a strong presumption that trial counsel's performance falls within the "wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694-95, 104 S. Ct. 2052, 2065; see also *People v. Mack* (1984), 105 Ill. 2d 103, 129-30, 473 N.E.2d 880.) It is well settled that the decision whether to present a given witness is a matter of trial strategy and, therefore, does not generally support a claim of ineffective assistance of counsel. (*People v. Wright* (1986), 111 Ill. 2d 18, 26-27, 488 N.E.2d 973; *People v. Cloyd* (1987), 152 Ill. App. 3d 50, 57, 504 N.E.2d 126.) As defendant correctly notes, there are exceptions to the general rule. (See *People v. Wright* (1986), 111 Ill. 2d 18, 488 N.E.2d 973 (failure to call expert witness based on trial counsel's misunderstanding of law constituted ineffective assistance of counsel); *People. v. Corder* (1982), 103 Ill. App. 3d 434, 431 N.E.2d 701 (trial counsel's failure to interview witnesses from list which the defendant gave him constituted ineffective assistance of counsel).) In our view, this case does not fall under an established exception, and we conclude that further erosion of the general rule is not warranted in this case.

At trial the State's expert witness testified as follows:

"MR. FLEMING [Assistant State's Attorney]: What can you tell about the color of the liquid?

MR. NOWICKI: Gasoline manufacturers add dyes to their gasoline so they can determine—readily determine what grade

the gasoline is so they can identify it later on. All three samples had the same dye in it. It was a pale yellow color.

Q. And is that indicative of whether the gasoline is leaded or unleaded?

A. In my experience, that kind of color usually indicates it is a regular gasoline.

Q. Regular meaning it has lead in it?

A. Yes."

On cross-examination, the State's expert stated:

"MR. COOPER [Defense Counsel]: Mr. Nowicki, regarding the—the gas chromatography study that you ran, did you analyze the additives in the gasoline?

MR. NOWICKI: No, I don't identify any of the specific components.

Q. Don't—doesn't gasoline, commercial grade gasoline, have additives in it?

A. Yes, sir.

Q. But you didn't—you didn't see if there were any or what they were?

A. No. I did not.

Q. On any of the samples; right?

A. No, sir."

In closing argument, the defendant's trial counsel stated:

"And the gasoline; did he check to see if the gasoline in the can was the same as the gasoline in the bottles? No. He said it was the same color. He didn't run a test on the additives. He could have tested that. He didn't test that, or if he did test it, he didn't make note of it."

In his post-trial motion, the defendant submitted the affidavit of his own expert who, if called, would testify that the sample obtained from the gasoline can had an additional component not present in the other two samples.

■ It seems clear that defendant's expert, if he had been called by defendant in trial, would not have contradicted the State's evidence. Testimony that the sample obtained from the gasoline can had an additional component than did those from the Molotov cocktails does not contradict the State's expert because he never tested the samples for additives. It is apparent from the affidavit of defendant's post-trial expert that he would not contradict the fact that each sample did contain regular leaded gasoline. In closing argument, defendant's counsel noted that the State did not prove that the gasoline in the can was the same as that in the bottles. Because defendant's ex-

pert would not have contradicted the State's evidence that all three samples contained gasoline, we determine that counsel's decision not to call an expert witness constituted reasonable trial strategy, under the circumstances, and defendant has failed to overcome the presumption that his counsel's performance fell within the wide range of reasonable professional assistance.

Assuming, *arguendo*, that trial counsel's performance was deficient, defendant has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) Defendant asserts that if his expert had testified, then there is a reasonable probability that the result which the jury reached would have been different. We disagree.

At most, defendant's expert could have established that the gasoline contained in the bottles was not the same as the gasoline in defendant's container in the car. We fail to see how that fact, if accepted as true, would create a reasonable probability that the jury would have reached a different result. There was strong circumstantial evidence which, notwithstanding the claimed error, would have enabled the jury to reach the same result.

It was 2:30 a.m., and defendant possessed business cards which had addresses of two buildings at the place he parked. A gasoline can, funnel, filler tube, piece of garden hose, and paper towels similar to the toweling used as wicks in the Molotov cocktails were found in the back of defendant's car. One Molotov cocktail was found within a few feet of defendant's car and a second nearby. Defendant testified that the gasoline can contained unleaded gasoline, the same type used in the car he was driving. It is undisputed that the gasoline can, in fact, contained leaded gasoline. Under the evidence, the jury could have reasonably concluded that defendant had used a different gasoline to make the Molotov cocktails and carried the filled gasoline container as a backup in case he was unable to complete his intended task with the two devices. While there is a possibility that a jury would have decided differently if trial counsel had called an expert to testify, "[i]t is not enough for the defendant to show that the errors had some effect on the outcome of the proceeding." (*Strickland v. Washington* (1984), 466 U.S. 668, 693, 80 L. Ed. 2d 674, 697, 104 S. Ct. 2052, 2067.) We conclude that trial counsel's decision not to call an expert witness did not substantially prejudice defendant.

■ Defendant next contends that his due process right to a fair trial was denied because the trial court failed to instruct the jury on

the definition of the term "arson." The jury instructions stated, *inter alia*:

> "A person commits the offense of possession [or transportation] of incendiary devices when he knowingly possesses [or transports] any incendiary device, and intends to use such device to commit the offense of arson."

The instructions explained each element of the offense but did not define the word "arson."

Generally, a party's failure to tender an instruction waives any claimed error for failure to give the instruction. (See 107 Ill. 2d R. 366(b)(2)(i).) However, in criminal cases a substantial defect in a jury instruction may be reviewed despite a party's failure to tender it when the interests of justice require. (*People v. Thurman* (1984), 104 Ill. 2d 326, 329, 472 N.E.2d 414; see also 107 Ill. 2d R. 451(c).) One application of the plain error exception to the waiver rule is where the trial court fails to define for the jury an essential element of the offense charged. (*People v. Stromblad* (1978), 74 Ill. 2d 35, 41, 383 N.E.2d 969; *People v. Johnson* (1981), 98 Ill. App. 3d 228, 234, 424 N.E.2d 610.) Here, we find the trial court's failure to *sua sponte* instruct the jury on the definition of arson was not plain error.

In instructions, a term which is employed in a general, nontechnical context need not be defined as long as nothing in the instruction obscures its meaning. (*People v. Johnson* (1981), 98 Ill. App. 3d 228, 234, 424 N.E.2d 610.) In *Johnson*, the court held that it was unnecessary for an instruction to define the word "theft" in a prosecution for burglary. (*People v. Johnson* (1981), 98 Ill. App. 3d 228, 234, 424 N.E.2d 610.) Similarly, we determine that it was not necessary for the instructions to define the word "arson" in a prosecution for possession (or transportation) of incendiary devices. Moreover, the committee notes to the possession of incendiary device instruction (Illinois Pattern Jury Instructions, Criminal, Nos. 15.05 to 15.07 (2d ed. 1981)) do not suggest that arson should be defined by instruction. We decline to invoke the plain error doctrine and find that defendant waived any error by his failure to tender instructions to the trial court. See, *e.g.*, *People v. Wooff* (1970), 120 Ill. App. 2d 225, 256 N.E.2d 881 (abstract of opinion).

■ Finally, defendant contends that the prosecutor's closing argument deprived him of a fair trial because it denigrated the burden of proof and discounted a viable defense of impossibility. In closing argument, the prosecutor stated:

> "The reason I get to talk to you again, as counsel indicated, is that the State has the burden of proof in this case. Counsel

has indicated that it's a difficult burden. I submit that the prosecution [*sic*] across the country meet this burden every day, and the criminals are convicted beyond a reasonable doubt every day in this country.

So, it's on a case-by-case basis, and because of the circumstances in this case, it's no more difficult than any other case that prosecutors across the country try every day.

There is no magic involved. It's up to you to decide what reasonable doubt is."

Defendant failed to object to the prosecutor's remarks during closing argument, and we would be justified in holding that he waived this issue. (See *People v. Saldana* (1986), 146 Ill. App. 3d 328, 337, 496 N.E.2d 757.) Notwithstanding the waiver rule, we conclude that the prosecutor's remarks were proper.

Remarks which characterize the State's burden of proof as one which is not unreasonable or impossible to meet and as one which prosecutors meet daily are proper commentary. (See *People v. Bryant* (1983), 94 Ill. 2d 514, 523, 447 N.E.2d 301; *People v. Green* (1983), 118 Ill. App. 3d 227, 235, 454 N.E.2d 792.) We see no appreciable difference between the remarks made in *Bryant* and *Green* and those made in this case and conclude that the argument to which defendant objects did not diminish the burden of proof or fall outside the bounds of appropriate argument.

Nor did the prosecutor's remarks discount a viable defense of impossibility. Defendant does not offer any authority to support the proposition that impossibility is a defense to the offense of possession or transportation of an incendiary device with an intent to commit arson.

By analogy, we note that the legislature has determined that impossibility resulting from a misapprehension of the circumstances is not a defense to the offense of attempt. (Ill. Rev. Stat. 1985, ch. 38, par. 8—4(b).) The evidence does not show that defendant had an ignition device for the Molotov cocktails, but it also fails to disclose that defendant knew that he was without one, and under this evidence the jury could consider that defendant believed he had the means to carry out his intended crime. *Cf. People v. Johnson* (1981), 102 Ill. App. 3d 122, 127, 429 N.E.2d 905 (it was consistent with the evidence to conclude that defendant mistakenly believed he had an ignition source, and such misapprehension of circumstances is no defense to attempted aggravated arson).

Furthermore, any claimed prejudice resulting from the State's remarks is mitigated by the fact that defendant did not tender a jury

instruction relating to the defense of impossibility.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

LINDBERG, P.J., and UNVERZAGT, J., concur.