THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDDIE L. CLAY, Defendant-Appellant.

Fourth District   No. 4—87—0319

Opinion filed December 30, 1987.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas K. Leeper, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and Linda Cullom, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

After a jury trial, defendant was convicted of armed violence and voluntary manslaughter in violation of sections 33A—2 and 9—2, respectively, of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, pars. 33A—2, 9—2). The underlying felony for the armed violence conviction was aggravated battery. (Ill. Rev. Stat. 1985, ch. 38, par.

12—4.) The circuit court of Adams County entered judgment on the armed violence conviction only and sentenced defendant to a term of 12 years' imprisonment. Defendant appeals his conviction and sentence. Because of our holding below, we need not address the propriety of defendant's sentence.

Defendant advances one argument pertaining to his conviction. He asserts the guilty verdict of armed violence predicated on the crime of aggravated battery is legally inconsistent with the guilty verdict of voluntary manslaughter. We hold that the verdicts are not legally inconsistent but that the armed violence conviction must be vacated because of the supreme court's decisions in *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48, and *People v. Fernetti* (1984), 104 Ill. 2d 19, 470 N.E.2d 501. As the issue involves a legal question, we will briefly recite the pertinent facts.

Defendant spent most of November 30, 1987, with the family of Calvin and Marilyn Hickman. Marilyn is defendant's aunt. Calvin and defendant had planned to go hunting that day but cancelled those plans because of the weather. Most of those present were consuming alcohol throughout the course of the day. There was some testimony that defendant and Marilyn were intoxicated.

Shortly after 3 p.m., all of the family had left the Hickman residence with the exception of Calvin, Marilyn, and defendant. Defendant testified that Calvin struck Marilyn, and she fell over some chairs. Defendant helped Marilyn back onto a chair. He then shoved Calvin against the television set and told him to stand there. According to defendant, Calvin swore at him and said, "If you want to get involved, I'll just show who is going to get involved." Calvin then left the living room and walked into his bedroom. Defendant testified that he assumed his Uncle Calvin went into the bedroom in order to get his gun. Defendant stated that every time he and his uncle went hunting, his uncle would retrieve his gun from the bedroom.

Defendant ran from the apartment to his van, which was parked on the street. Defendant testified that he first tried to start the ignition in order to get away. The van would not start. Thinking that his Uncle Calvin would shoot him through the windows of the van, defendant grabbed his .20-gauge shotgun and a clip which was already loaded from in back of the seat. As the defendant got out of the van, he placed the clip into the shotgun and pushed the bolt forward. The gun was ready to fire. He testified that he intended to take his Aunt Marilyn away from the apartment. He also stated he had decided that if Calvin came out of the apartment with a gun, defendant would shoot Calvin to wound him.

Defendant opened the storm door with his left hand while holding the gun in his right hand. The barrel of the gun was pointing down. As defendant prepared to knock on the door, he believed he heard the door rattle. Defendant thought Calvin was coming out the door, and, therefore, jumped away from the door. As he did so, the gun raised up. He grasped it with his left hand, but the gun went off, hitting the narrow window next to the door. The shot killed Calvin. No other witnesses actually saw the incident. Although Marilyn was present at the scene, she admitted that she is an alcoholic and stated she could not recall the events that occurred that afternoon.

The jury returned verdicts finding defendant guilty of armed violence, guilty of voluntary manslaughter, and not guilty of involuntary manslaughter.

Defendant argues the guilty verdicts for armed violence predicated on the felony of aggravated battery and voluntary manslaughter are legally inconsistent because the mental states are mutually exclusive. Essentially, defendant's argument reduces to the following propositions: (1) the underlying felony for the armed violence conviction, aggravated battery, is a premeditated crime; and (2) voluntary manslaughter is an unpremeditated crime, and, therefore, the mental states are legally inconsistent.

We disagree with categorizing aggravated battery solely as a premeditated crime. For simplicity's sake, we will refer to the crime of battery rather than aggravated battery since the principles are the same. Homicide involves crimes of murder and voluntary manslaughter. The difference between the two is in the mental states. Voluntary manslaughter, although committed knowingly or intentionally, contains certain mitigating factors which makes the homicide "committed with no planning and no prior intent to commit a crime." (*People v. Alejos* (1983), 97 Ill. 2d 502, 507, 455 N.E.2d 48, 50.) These mitigating factors are a sudden and intense passion resulting from a serious provocation (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a)), or an unreasonable but actual belief that the circumstances required the use of deadly force (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b)). Voluntary manslaughter is therefore distinguished from murder because it is unpremeditated. (*Alejos*, 97 Ill. 2d at 507, 455 N.E.2d at 50.) Battery is not reduced or negated because of these mitigating factors. (Accord Ill. Ann. Stat., ch. 38, par. 12—3, Committee Comments, at 439-40 (Smith-Hurd 1979).) If one strikes another causing bodily harm because of an unreasonable but actual belief that the force is necessary, a battery is nevertheless committed. In sum, battery is broader than murder in that it encompasses the

unpremeditated acts defined under the voluntary manslaughter statute as well as premeditated acts. Therefore, there is no inconsistency between battery and voluntary manslaughter.

When battery is increased to the felony of armed violence, a different situation occurs for policy reasons. In *Alejos*, our supreme court held that voluntary manslaughter could not serve as the predicate felony for armed violence. Armed violence has as one of its purposes deterring felonies committed with weapons. This purpose does not apply to voluntary manslaughter because manslaughter is an unpremeditated crime. (*Alejos*, 97 Ill. 2d at 507-10, 455 N.E.2d at 50-51.) This holding was later reaffirmed in *People v. Fernetti* (1984), 104 Ill. 2d 19, 470 N.E.2d 501.

In the instant case, the State has avoided the effects of *Alejos* and *Fernetti* by charging defendant with armed violence predicated on aggravated battery and voluntary manslaughter, and receiving convictions on both charges. We hold that where convictions are returned for armed violence and voluntary manslaughter arising out of the same set of facts, the armed violence conviction must be vacated and judgment entered only on the voluntary manslaughter conviction. This is in keeping with the precedent of *Alejos* and *Fernetti*.

Pursuant to the authority of Supreme Court Rule 615(b) (107 Ill. 2d R. 615(b)), we vacate defendant's conviction for armed violence and affirm entry of the judgment on the conviction for voluntary manslaughter. The cause must be remanded for resentencing as defendant's sentence on the armed violence conviction is now inappropriate.

Affirmed in part; vacated in part and remanded.

GREEN, P.J., and SPITZ, J., concur.