THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FREDDY BERNARD McCLENDON, Defendant-Appellant.

Fourth District No. 4—89—0500

Opinion filed May 9, 1990.

Daniel D. Yuhas and Peter L. Rotskoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

During a series of altercations occurring in Danville, defendant shot and killed Keith Bevly. Defendant was charged with three counts of first-degree murder (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a), 9—1(a)(2)) and with armed violence based upon aggravated battery (great bodily harm) (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). The jury convicted him of armed violence. It could not reach a decision on the murder counts. The trial court sentenced defendant to 30 years' im-

prisonment for the armed violence conviction. Subsequently, defendant pleaded guilty to second-degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—2) and was sentenced to a concurrent 15-year term of imprisonment.

Defendant argues the trial court erred in instructing the jury; he was denied his constitutional right to confront witnesses by admission of an evidence deposition; his conviction of armed violence should be vacated because he subsequently pleaded guilty to second-degree murder; and the trial court abused its discretion in sentencing.

We affirm.

## BACKGROUND

The incident occurred during the late evening hours of August 22, 1988, in the main parking lots of the Fair Oaks apartment complex in Danville. There are two lots separated by a curb and a sidewalk. Several persons were gambling near the smaller lot. Defendant had parked his car in the smaller lot near a light pole and the gamblers. He was there with his cousin, James "Termite" Graham.

Gregory "Wheat" Foreman, Steve Butler, and Keith Bevly came to the area in the same vehicle. Bevly parked the vehicle in the larger lot. Then, he and the others walked over to the smaller lot. As Bevly crossed into the smaller lot, Boo Strong (Willie Williams), defendant's uncle, asked Bevly what he wanted in the parking lot. Bevly responded that it was a free lot and he could go where he wanted. Strong then told Bevly to move away from his car, a fight started, and Bevly hit Strong.

Defendant approached Bevly and asked why he was fighting with his uncle. Defendant then tried to grab Bevly's legs, lift him, and throw him to the ground. However, Bevly wrestled defendant to the ground. Michael "Meathead" Foreman, Gregory Foreman, and several others broke the fight up. Bevly walked back to his car and put on a pair of gym shoes.

## STATE'S WITNESSES

Robert Moore testified he left the lots for a few minutes after Bevly went back to his car. When he returned, defendant, Bevly, Termite, and Wheat were shouting. Bevly walked over to the small lot, near Termite and defendant. Termite said, " 'Ain't nobody going to fuck with Freddy.' " Bevly then said he was going to hit Termite with a beer can, which he was carrying. Bevly was about 18 feet from defendant when he said this. Moore stated he left when Bevly and defendant were within arm's reach of each other. Moore saw a

chrome gun at defendant's side. He did see Bevly running but did not see him fall. He heard three to four shots. Moore admitted he was subpoenaed to testify and was escorted to trial.

On cross-examination, Moore stated Bevly, defendant, and Termite were yelling across the lots and threatening each other. This occurred after Bevly returned to his car. As Bevly walked back, Termite was yelling at him. Moore did not hear Bevly make any threat other than he would hit Termite with a beer can. Wheat Foreman tried to persuade Bevly to stay out of the smaller lot. On redirect examination, Moore stated he saw defendant point a gun in Bevly's direction.

Wheat Foreman stated 30 minutes elapsed between the first fight and the shooting. He, Bevly, and Butler were standing on the other side of the lots from defendant and Graham. As they walked across the lots, Graham said, " 'Ain't nobody going to fuck with Fred.' " Bevly said, " 'What's up?' " Wheat did not remember whether Bevly had a can of beer in his hand. He had been drinking earlier. Wheat did not see Bevly make any gestures or movements toward Graham or defendant. Bevly was facing defendant when defendant shot him. Bevly turned and ran. Then, defendant fired three more times. Wheat stated Bevly got hit and stumbled on the third shot; but he kept running. Wheat further testified there was a delay between the first shot and the next three. Bevly turned and was running away when the second shot was fired.

Donny Duckworth was gambling that night but observed the shooting. Duckworth stated that after the initial fight Bevly returned to his car. Then, defendant and Wheat Foreman started arguing. Bevly told Wheat he could handle his own battles. Bevly stated he would "whup" Graham like he had the others. Graham then said, " 'Ain't nobody going to fuck with Freddy, now.' " Bevly then walked up to Graham, holding a beer bottle or can. However, defendant stepped in front, pushed Graham back, and shot Bevly. Defendant and Bevly were very close to each other when the shooting occurred. After defendant shot Bevly the first time, Bevly turned and ran into the other parking lot. Bevly was running around the buildings when the other shots were fired. However, Bevly had not reached the buildings. Duckworth saw four to five shots being fired.

Steve Butler testified that he, Bevly, and Wheat Foreman were talking after the first fight. Defendant came to the sidewalk and wanted to know whether they were all going to "jump him." Defendant and Bevly started to argue. Then, Graham came up. Bevly said, " 'What's up with you? I will faze [fade] you.' " This meant Bevly would hurt him. Butler heard defendant say, " 'Watch out, Termite

[Graham], I am going to have to do the time. Watch out, I'm going to do time.' " Then defendant pulled a gun out and started shooting. Defendant fired four times. Bevly did not have anything in his hands when the shooting started. However, he had been drinking canned beer earlier.

After the first shot, Bevly turned and ran. Bevly was across the sidewalk by the time defendant fired the second shot. Butler stated he thought Bevly was shot first in the chest; then, shot again as he turned.

### DEFENDANT'S STATEMENT

Defendant gave a statement to the police on August 30, 1988. Defendant stated that after Bevly started kicking his uncle, defendant intervened. Defendant did not want to fight, but Bevly threatened to knock him out. They fought. Graham broke up the fight. Bevly kept threatening defendant, who told Bevly to leave him alone. Graham said, " 'Fuck the punk.' "

Defendant saw Wheat Foreman hand Bevly a bluesteel gun. Graham then handed defendant a gun. Defendant told Graham he was going home. However, he turned around and saw Wheat and Bevly running toward him. Defendant told Graham to get back, begged Bevly to leave him alone, saw Bevly pull a gun out of his shirt, and saw Bevly point the gun at him. Because Bevly was threatening to kill defendant, defendant shot Bevly. Defendant threw the weapon he used away. It was a silver .32 or .38 caliber handgun with a brown handle. Graham had given him the handgun in between his first fight with Bevly and the shooting. Defendant did not fire the handgun after Bevly turned around.

### DEFENDANT'S WITNESS

Theresa Graham, defendant's cousin, stated she arrived at the main parking lots at approximately 11:30 p.m. on August 22, 1988. She observed the initial fight between Bevly and defendant. Defendant told her about the fight between Bevly and Strong. She heard Bevly threaten to kill defendant; then she heard Bevly threaten her brother. Bevly threatened defendant and put his hand inside his shirt or jacket. He walked toward defendant. As Bevly started to remove his hand from his jacket, defendant shot him twice. After he was shot, Bevly initially continued to walk toward defendant; then, he turned and ran.

On cross-examination, Graham stated she did not remember telling the police she left her apartment at 12:45 a.m. on August 23,

1988. After the second shot, Bevly made three 360-degree turns, and then ran away. She did not see Bevly with a weapon. She saw defendant aim at the ground and fire again after Bevly was out of sight.

## MEDICAL TESTIMONY

Defendant stipulated to the admission of a videotaped evidence deposition. Dr. Stanley Bobowski stated there were two entry wounds on the body. Bevly had been shot in the chest and the left buttock. The bullet which entered the left buttock took an upward angle and severed the aorta. Bevly was either running or falling when he was shot in the left buttock. Bevly died from shock caused by massive blood loss. The chest wound did not destroy any vital areas. Bobowski admitted that the oblique angle of entry could have been caused by the weapon being held at a 60-degree downward angle.

## ANALYSIS

During the instruction conference, in conjunction with the murder instructions, the prosecutor offered the following Illinois pattern jury instruction:

"Force which is likely to cause death or great bodily harm includes [(the firing of a firearm in the direction of a person to be arrested, even though no intent exists to kill or inflict great bodily harm) (the firing of a firearm at a vehicle in which the person to be arrested is riding)]." Illinois Pattern Jury Instructions, Criminal, No. 24—25.15 (2d ed. 1981) (hereinafter IPI Criminal 2d).

Defense counsel objected to the instruction. The prosecutor then modified the instruction. Defense counsel agreed to the modified instruction. It states:

"Force which is likely to cause death or great bodily harm includes the firing of *** a firearm in the direction of a person even though no intent exists to kill or inflict great bodily harm."

The prosecutor next offered a non-IPI issues instruction on armed violence. It stated:

"To sustain the charge of Armed Violence, the State must prove the following propositions.

First: That the defendant was armed with a dangerous weapon; and

Second: That he committed Aggravated Battery while armed with a dangerous weapon;

Third: That the defendant was not justified in using the

force which he used.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of those propositions has not been proved beyond a reasonable doubt you should find the defendant not guilty."

Defense counsel stated he was going to make a motion for directed verdict on the armed violence count. He did not believe it should be predicated upon aggravated battery. If that motion were denied, he had only a general objection to the armed violence instruction. The court gave the instruction over defendant's general objection.

The jury was also instructed on the definition of aggravated battery.

Initially, defendant argues error in giving the non-IPI issues instruction on armed violence, in defining the use of force, and the lack of a definitional instruction on battery either individually or cumulatively denied him his constitutional right to a fair trial.

■ Generally, a failure to object at trial to an asserted error in jury instructions waives review of the question. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248; *People v. Casey* (1989), 179 Ill. App. 3d 737, 534 N.E.2d 1036.) Additionally, no party may raise on appeal the failure to give an instruction unless he tendered it at trial. (*Huckstead*, 91 Ill. 2d 536, 440 N.E.2d 1248.) Failure to object to an instruction because it is a non-IPI instruction waives review of the issue where defendant failed to offer the IPI instruction. (*People v. Barber* (1974), 20 Ill. App. 3d 977, 313 N.E.2d 491.) However, the waiver rule may be modified where a grave error occurred or where waiver will result in denial of a fundamentally fair trial. *Huckstead*, 91 Ill. 2d 536, 440 N.E.2d 1248; 107 Ill. 2d R. 451(c).

■ Defendant waived review of the non-IPI issue instruction on armed violence. He objected to it generally, but did not object to it as a non-IPI instruction. He did not offer an IPI instruction in its place. Additionally, defendant did not raise this issue in his post-trial motion. Therefore, defendant has waived review of the propriety of the armed violence instruction. *Huckstead*, 91 Ill. 2d 536, 440 N.E.2d 1248; *Casey*, 179 Ill. App. 3d 737, 534 N.E.2d 1036; *Barber*, 20 Ill. App. 3d 977, 313 N.E.2d 491.

■ Similarly, the defendant has waived review of the definitional instruction on force. Defendant initially objected to the language of the original instruction. The prosecutor withdrew it and modified it.

Defendant then stated he had no objection to the instruction as modified. Defendant did not raise the issue in his post-trial motion. Therefore, defendant has waived review of the instruction. *Huckstead*, 91 Ill. 2d 536, 440 N.E.2d 1248.

At trial, neither party offered an instruction on battery. An instruction defining aggravated battery was, however, given. Generally, a party may not object to the absence of an instruction when he fails to tender it. (*Huckstead*, 91 Ill. 2d 536, 440 N.E.2d 1248.) However, in his post-trial motion, defendant argued that the instruction was essential because battery was the predicate offense of aggravated battery, which was the basis of the armed violence count. This could be viewed as an argument that the jury was not properly instructed on the elements of armed violence, since it did not know the legal definition of battery. Fundamental fairness requires the jury be given basic instructions. Those instructions include the elements of the offense charged. (*People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861.) Since the lack of a battery instruction could be viewed as affecting the fundamental fairness of defendant's trial, the merits of this issue will be addressed.

■ Defendant argues the jury was improperly instructed because it never was told it had to find bodily harm was done without legal justification. The IPI committee note states a definition of battery should be given whenever the jury is instructed on aggravated battery. (IPI Criminal 2d No. 11.07, Committee Note, at 210.) The primary responsibility for preparing instructions rests with the parties. Therefore, ordinarily a trial court has no general duty to *sua sponte* instruct the jury on the facets of the case. *Huckstead*, 91 Ill. 2d 536, 440 N.E.2d 1248; *People v. Hicks* (1987), 162 Ill. App. 3d 707, 516 N.E.2d 807; *People v. Peebles* (1984), 125 Ill. App. 3d 213, 465 N.E.2d 539; *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610.

In instructions, a term which is employed in a general, nontechnical context need not be defined. (*Hicks*, 162 Ill. App. 3d 707, 516 N.E.2d 807 (lack of definition of arson in a possession of incendiary devices case was not plain error); *Johnson*, 98 Ill. App. 3d 228, 424 N.E.2d 610 (lack of definition of theft was not plain error in a burglary trial); *People v. Parks* (1971), 133 Ill. App. 2d 348, 273 N.E.2d 162 (theft is not a term of art when considered in the case).) The *Parks* court also noted that the dictionary definition of theft compared with its statutory definition. See also *Peebles*, 125 Ill. App. 3d 213, 465 N.E.2d 539.

A person commits battery when he knowingly or intentionally, without legal justification, causes harm to an individual by any means.

(Ill. Rev. Stat. 1987, ch. 38, par. 12—3(a)(1).) Battery is defined as "the unlawful beating or use of force on a person without his consent." (Webster's Ninth New Collegiate Dictionary 135 (1986).) The "unlawful" beating or use of force implies that the offender acted "without justification." Thus, it could fairly be stated that the jury would have understood the meaning of battery in this case. (See *Hicks*, 162 Ill. App. 3d 707, 516 N.E.2d 807; *Parks*, 133 Ill. App. 2d 348, 273 N.E.2d 162.) No plain error occurred under the facts of the instant case.

 Defendant makes a one-paragraph subargument urging this court to find that waiver of the instructions issue for purposes of review constituted ineffective assistance of counsel. The purpose of the constitutional requirement of effective assistance of counsel is to ensure a fair trial. The benchmark for assessing ineffective assistance claims is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. A two-part test exists for determining ineffective assistance of counsel. First, defendant must show counsel's performance was actually deficient; and second, defendant must show the deficiency prejudiced the defense. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Wright* (1986), 111 Ill. 2d 18, 488 N.E.2d 973; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Any failure to preserve for review the instructions issues did not create a reasonable probability of a different outcome. No error occurred in instructing the jury.

Bobowski had a heart attack approximately one week before defendant's trial date. On December 23, 1988, the prosecutor argued a motion for an extension of the speedy trial term. (Ill. Rev. Stat. 1987, ch. 38, par. 103—5(c).) The prosecutor noted that it would be possible to take Bobowski's deposition while he was hospitalized or at home recovering. However, the prosecutor had been notified that Bobowski could not testify in court. The prosecutor asked for a stipulation as to the content of Bobowski's testimony. Defense counsel did not agree to a stipulation. However, counsel stated he would agree with an evidence deposition procedure. The court reset the trial date and ordered the deposition to be taken in accordance with Supreme Court Rule 414 (107 Ill. 2d R. 414). Defense counsel was present during the deposition. However, defendant was not personally present. At trial, defendant stipulated to the admission of the deposition.

In his post-trial motion, defendant alleged he was denied his sixth amendment right "to confront the pathologist in front of a jury of his peers for cross-examination purposes." In arguing the motion, counsel

stated defendant did not waive the presence of Bobowski in open court. Defendant now argues he was denied his sixth amendment right to confront the witness by admission of Bobowski's evidence deposition. Defendant contends he did not waive his presence during the evidence deposition.

Absent plain error, defendant has waived review of this issue. In a criminal case, both a trial objection and a written post-trial motion raising the issue are necessary to preserve an error for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 185-91, 522 N.E.2d 1124, 1129-32, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274; *People v. Crowder* (1988), 174 Ill. App. 3d 939, 529 N.E.2d 83.) Here, defendant stipulated to the admission of the deposition at trial. He stated a sixth amendment challenge in his post-trial motion. However, it was directed to Bobowski's absence at trial, not defendant's absence at the deposition. A defendant may not change or add to the basis for his objection on review. A specific objection to evidence eliminates all grounds not specified. *People v. Travis* (1988), 170 Ill. App. 3d 873, 889-90, 525 N.E.2d 1137, 1146-47, *cert. denied* (1989), 489 U.S. 1024, 103 L. Ed. 2d 209, 109 S. Ct. 1149.

Waiver applies to constitutional issues as well as nonconstitutional issues. (*People v. Thomas* (1988), 172 Ill. App. 3d 172, 526 N.E.2d 467.) However, plain error or errors affecting substantial rights may be addressed although they were not raised in the trial court. (107 Ill. 2d R. 615(a); *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) Review of issues pursuant to Rule 615(a) only occurs where the evidence is closely balanced or the error denied the defendant a right to a fair trial. (*People v. Lucas* (1981), 88 Ill. 2d 245, 430 N.E.2d 1091.) It should be noted that defendant does not argue admission of the deposition was improper because it failed to comply with Supreme Court Rule 414(e). 107 Ill. 2d R. 414(e).

■ On the merits, we note the sixth amendment gives a criminal defendant the right to confront witnesses against him. (*Coy v. Iowa* (1988), 487 U.S. 1012, 101 L. Ed. 2d 857, 108 S. Ct. 2798; *People v. Bastien* (1989), 129 Ill. 2d 64, 541 N.E.2d 670; U.S. Const., amend. VI.) *Coy* held a statute which permitted a child sex-offense victim to testify from behind a screen was unconstitutional. The statute had a presumption that the child would suffer severe trauma when testifying. The *Coy* Court stressed that the right to face one's accusers is a fundamental part of the rights conferred by the confrontation clause. Similarly, in *Bastien*, the Illinois Supreme Court, relying on *Coy*, found a statute which permitted the admission of a videotaped deposition of a child witness, without a finding of special circumstances, was

unconstitutional. The statute also did not provide for contemporaneous cross-examination of the witness.

Therefore, the State's argument that a face-to-face meeting is a secondary aspect of the constitutional right to confront witnesses is not in line with the most recent Supreme Court decisions. It is also not consistent with older Illinois cases which note the defendant's presence is essential because he may suggest lines of examination to his attorney. See *People v. Nastasio* (1960), 19 Ill. 2d 524, 168 N.E.2d 728.

*Coy* and *Bastien* dealt with the confrontation clause in the context of available witnesses who appeared at trial. In *Nastasio*, no statement was made as to the availability of the witnesses for trial. Here, Bobowski was unavailable due to his illness. The *Coy* Court recognized that the right to confront witnesses is not absolute. (See also *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531.) In *Roberts*, the Court found that where a hearsay declarant is not present for cross-examination at trial, the confrontation clause requires a showing that he is unavailable. The clause also requires that his statement is admissible only if it bears " 'indicia of reliability.' " (*Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539.) Other jurisdictions following this analysis have found depositions, taken outside of the defendant's presence, do not violate his confrontation rights. (See *Coleman v. State* (Ind. 1989), 546 N.E.2d 827; *Gallagher v. State* (Ind. App. 1984), 466 N.E.2d 1382; *State v. Wells* (Iowa 1989), 437 N.W.2d 575.) However, other courts have found a defendant must waive his presence at the deposition prior to its admission. (See generally *State v. Alvarado* (1988), 158 Ariz. 89, 761 P.2d 163 (and cases cited therein).) Many jurisdictions have found admission of videotaped depositions of available child sex-offense victims satisfies the sixth amendment requirement where a special finding of trauma is made. See generally *State v. Dunbar* (Vt. 1989), 566 A.2d 970; *State v. Tafoya* (N.M. 1988), 108 N.M. 1, 765 P.2d 1183, *cert. denied* (1989), 489 U.S. 1097, 103 L. Ed. 2d 938, 109 S. Ct. 1572; *State v. Lucero* (N.M. Ct. App. 1989), 109 N.M. 298, 784 P.2d 1041; *People v. Thomas* (Colo. App. 1988), 770 P.2d 1324.

The *Nastasio, Bastien,* and *Coy* cases are distinguishable from the instant case. No showing was made in those cases that the witness was unavailable to testify at trial. Therefore, the analysis of *Roberts* should be followed. Here, the pathologist was unavailable. The deposition was taken under oath, and the witness was subject to cross-examination by defense counsel. Under *Roberts* and *Coleman,* the admission of the statement did not violate defendant's right to a

face-to-face confrontation with the witness. See *Gallagher*, 466 N.E.2d 1382.

Defendant next argues his armed-violence conviction must be vacated because he subsequently pleaded guilty to second-degree murder based upon the same facts. Defendant relies upon *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48, *People v. Fernetti* (1984), 104 Ill. 2d 19, 470 N.E.2d 501, and *People v. Clay* (1987), 165 Ill. App. 3d 68, 518 N.E.2d 659. In *Alejos*, the court held voluntary manslaughter as an unpremeditated offense could not serve as a predicate offense for armed violence. (*Alejos*, 97 Ill. 2d at 513, 455 N.E.2d at 52.) In *Fernetti*, the court, using the same analysis, held involuntary manslaughter could not serve as a predicate offense for armed violence. (*Fernetti*, 104 Ill. 2d at 25, 470 N.E.2d at 503.) In *Clay*, the court noted the State could not avoid *Alejos* and *Fernetti* by charging defendant with armed violence based upon aggravated battery and voluntary manslaughter and receiving convictions on both. The court held that when the convictions are returned for armed violence and voluntary manslaughter arising out of the same set of facts, the armed-violence conviction must be vacated and judgment entered only on the voluntary-manslaughter conviction. *Clay,* 165 Ill. App. 3d at 71, 518 N.E.2d at 661.

*Alejos, Fernetti,* and *Clay* do not control the instant situation. In those cases, the same act supported the convictions. Here, defendant was charged with armed violence based upon aggravated battery. The aggravated battery alleged great bodily harm. The evidence showed that during the argument, defendant pushed his cousin out of the way, said he was going to do "the time," and shot Bevly in the chest. This wound was not fatal. This evidence would sustain the armed-violence conviction based upon aggravated battery.

After defendant initially shot Bevly, Bevly turned and ran. The second or third shot was the fatal one. The murder counts were based upon the second physical act of shooting Bevly. The witnesses disagreed as to the timing between the first and second shots. Additionally, the testimony varied about how far Bevly had run prior to the second injury. Defendant testified he saw Bevly with a weapon, Bevly threatened his life, and he meant only to defend himself. This was also disputed. Bobowski testified that the fatal shot could have been caused by someone aiming at the ground.

 █ When more than one offense arises from a series of incidental or closely related acts and the offenses are not included offenses, conviction and concurrent sentences may be entered on each offense. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838; *People*

*v. Doe* (1988), 175 Ill. App. 3d 371, 529 N.E.2d 980; *People v. Drake* (1988), 172 Ill. App. 3d 1026, 527 N.E.2d 519.) Here, the jury could have found two physical acts occurred which were the basis for the two convictions. The armed violence based upon shooting Bevly in the chest and injuring him is not an included offense of the voluntary manslaughter based upon the second series of shots. Defendant could have been appropriately convicted of murder and aggravated battery. (*People v. Taylor* (1985), 139 Ill. App. 3d 779, 487 N.E.2d 767; *People v. Wieland* (1984), 123 Ill. App. 3d 576, 462 N.E.2d 1256.) Since defendant could have appropriately been convicted of both offenses, no problem arises when he later decided to plead guilty to an included offense of the first-degree murder counts. Defendant's armed-violence conviction need not be vacated.

Defendant next argues that the trial court abused its discretion in sentencing. Defendant contends the sentence was unduly severe in light of his record and the fact that the offense was provoked. Armed violence is a Class X felony. It is punishable by a sentence of not less than 6 years nor more than 30 years' incarceration. (Ill. Rev. Stat. 1987, ch. 38, pars. 33A—3(a), 1005—8—1(a)(3).) The trial court sentenced defendant to 30 years' imprisonment. The court noted defendant's record showed escalating violence and he displayed a cavalier attitude about shooting someone. Defendant's presentence report showed three adult felony convictions and five misdemeanor offenses. The court correctly noted defendant's record showed increased weapons offenses.

Absent an abuse of discretion, the trial court's sentencing determination will not be altered upon review. (*People v. Ward* (1986), 113 Ill. 2d 516, 499 N.E.2d 422.) The trial court is in the best position to assess the proper sentence based upon the particular circumstances of the case. (*Ward*, 113 Ill. 2d at 525-26, 499 N.E.2d at 425; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Jones* (1988), 172 Ill. App. 3d 1048, 527 N.E.2d 521.) No abuse of discretion in sentencing occurred.

For the above reasons, we affirm the trial court.

Affirmed.

LUND AND SPITZ, JJ., concur.