THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORNELL CAMPBELL, Defendant-Appellant.

Fourth District    No. 4—98—0532

Opinion filed December 16, 1999.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GARMAN delivered the opinion of the court:

A jury convicted defendant Cornell Campbell of attempt (armed

robbery) (720 ILCS 5/8—4, 18—2(a) (West 1998)) and two counts of first degree murder (720 ILCS 5/9—1(a)(1), (a)(2) (West 1998)) and the trial court sentenced him to 75 years. Defendant raises the following arguments on appeal: (1) the trial court denied him a fair trial by allowing the State to use his nickname, "Psycho"; (2) Public Act 89—689 (Pub. Act 89—689, eff. December 31, 1996 (1996 Ill. Laws 3775)), which enacted section 115—10.2 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/115—10.2 (West 1998)) (residual hearsay statute), violates the single subject rule of the Illinois Constitution (single subject rule) (Ill. Const. 1970, art. IV, § 8(d)); and (3) even if Public Act 89—689 does not violate the single subject rule, the trial court erred in admitting the written statement of witness James "Tanky" Gordon into evidence. We affirm.

## I. BACKGROUND

On May 9, 1997, about 10 p.m., Michael Satterfield rode his bike to the local Shop-n-Save parking lot, where he met his girlfriend, Yolanda Lacy. Lacy gave Satterfield $10 and he left to buy some crack cocaine. On his way, Satterfield saw his friend, Tommy, who agreed to go with Satterfield to look for cocaine. Satterfield first rode his bike home and, then, he and Tommy drove in Tommy's car to buy the cocaine. The two men bought a $10 piece of crack cocaine and proceeded to a friend's house to smoke it. At about 1:30 a.m., Satterfield, Tommy, and several friends went out driving again in Tommy's car to buy some more cocaine.

Sometime after 1:30 a.m., Satterfield saw Michael Grundler sitting in his car. The car was parked with the engine running. Grundler made a motion toward Tommy's car, which Satterfield interpreted as meaning Grundler was looking for cocaine. Satterfield motioned back to Grundler that he should follow Tommy's car around the corner. Grundler did so, whereupon Satterfield exited Tommy's car and approached Grundler. Grundler told Satterfield that he was looking to buy $40 worth of cocaine. Satterfield agreed to help Grundler look for cocaine in hopes that Grundler would share it with him. They drove to four different locations, but found none.

After some time, Satterfield saw defendant, who was also known by the nickname "Psycho," and James "Tanky" Gordon walking in the same direction that Satterfield and Grundler were driving. Satterfield was acquainted with both of them from the neighborhood and testified that he got along well with defendant, but was not great friends with Gordon. Satterfield asked Gordon if he could supply $40 worth of cocaine. Gordon said he could and climbed into the backseat of Grundler's car. Defendant remained outside the car. Gordon handed

Grundler a package of cocaine in exchange for $40. Gordon then threw another package of cocaine toward the front seat and told Grundler to give him $80 for all of the cocaine. Grundler protested that he only had $40. The second piece of cocaine had fallen between the front seats, and Satterfield and Grundler tried to find it.

Satterfield testified that as he and Grundler were searching for the cocaine, defendant came to Grundler's window, reached in, and grabbed Grundler. As defendant reached inside, he said, "Break yourself," which Satterfield testified means "give up everything you got—jewelry, money, anything of value." Grundler struggled with defendant and then put his car in drive. Satterfield heard a "pop" and felt pain in his left arm. He saw Grundler's head fall back. Satterfield and Gordon each testified that they jumped out of the car and ran home.

Two witnesses, James Taylor and Carol Ewing, testified that between 2 and 3 a.m. they were walking home and heard a loud "boom." They saw a red car and thought an accident had occurred because the car had struck a parked truck. Taylor testified that Ewing opened the passenger door, and they saw Grundler inside "bleeding to death."

On May 21, 1997, defendant surrendered to Chicago police after learning that he was wanted by Springfield police in connection with this case. The State charged defendant on June 12, 1997, with two counts of first degree murder. The State later added several charges, including one count of attempt (armed robbery). The State nol-prossed all counts other than first degree murder and attempt (armed robbery).

The jury trial was held from April 20 through April 24, 1998. The jury heard the oral testimony of 15 witnesses, including defendant. Although Gordon was present at trial and called as a witness, he declined to testify on fifth amendment grounds. The State moved to admit into evidence a written statement prepared by Gordon on August 22, 1997, in the presence of his attorney, Scott Hanken, and Pat Ross and Tim Young, two Springfield police officers. The statement was prepared after the State had dismissed a charge against Gordon for delivery of a "lookalike" substance. However, attorney Hanken testified that no *quid pro quo* was involved. The trial court admitted Gordon's statement into evidence under the residual hearsay statute, over the objections of defendant.

The jury found the defendant guilty of all counts and the trial court sentenced him to 60 years for murder and a consecutive 15 years for attempt (armed robbery). This appeal followed.

## II. ANALYSIS

### A. Use of Nickname

■ Defendant contends that the trial court denied defendant his right to a fair trial by allowing the State to refer to defendant by his nickname, "Psycho," during trial. Defendant contends that he was prejudiced by the negative connotations associated with that nickname. A trial court's decision on the admission of evidence will not be disturbed absent an abuse of discretion resulting in prejudice to the defendant that is clear from the record. *People v. Ofoma*, 242 Ill. App. 3d 697, 705, 610 N.E.2d 738, 743 (1993).

■ While this court has not addressed the issue of prejudice resulting in a jury trial from the use of a defendant's nickname, the First District Appellate Court has addressed the issue, and we are persuaded by its reasoning. "Generally, there is no impropriety in referring to a defendant by his or her nickname." *People v. Murillo*, 225 Ill. App. 3d 286, 294, 587 N.E.2d 1199, 1205 (1992). "It is not reversible error to call a defendant by his nickname." *People v. Thomas*, 8 Ill. App. 3d 690, 694, 290 N.E.2d 418, 421 (1972). However, ordinary considerations of fair play dictate that the use of a nickname that has a pejorative connotation be permitted sparingly, only upon a showing of necessity for its use. *Murillo*, 225 Ill. App. 3d at 294, 587 N.E.2d at 1205; *People v. Jones*, 295 Ill. App. 3d 444, 450-51, 692 N.E.2d 762, 767 (1998). "[E]ven when [pejorative connotations exist], it is not improper to allow a defendant to be referred to by his nickname if witnesses knew and identified defendant by that name." *People v. Salgado*, 287 Ill. App. 3d 432, 445, 678 N.E.2d 648, 658 (1997) (use of nickname "Bam Bam" was not prejudicial error because it did not carry a negative connotation and witnesses knew and identified defendant by that name).

In *Murillo*, prejudicial error was not committed from the use of defendant's nickname "Dillinger" because (1) there was no question that defendant bore that nickname, (2) the witnesses knew him by that name (two knew him solely by that name), and (3) the defense counsel also referred to defendant three times as "Dillinger" during closing argument. In *Jones*, the defendant was not prejudiced by the use of his nickname, "Lunchmeat," because (1) the nickname "Lunchmeat" does not have a pejorative connotation, and (2) even if it does have a negative connotation, the nickname was used sparingly at trial. In *People v. Hendrix*, 250 Ill. App. 3d 88, 104, 620 N.E.2d 1176, 1188 (1993), the defendant was not prejudiced by the use of his nickname, "Homicide," because the name was introduced only for the relevant purpose of establishing his identity and because the State did not overemphasize the nickname's link to a gang membership.

■ While we recognize the pejorative connotations associated with the nickname "Psycho," we hold that the use of the nickname in defendant's trial did not rise to the level of prejudicial error. First, defendant's nickname was introduced only for the relevant purpose of establishing defendant's identity. The nickname was particularly relevant because at least two witnesses, Satterfield and Gordon, identified defendant to police by it. See *People v. Janis*, 240 Ill. App. 3d 805, 813-14, 608 N.E.2d 359, 367 (1992) (references to nickname were not prejudicial if they aided in identification of defendant). Second, the witnesses knew and identified defendant by that name. Defendant suggests that the use of defendant's nickname would have been proper only if the witnesses knew him strictly by that name. We disagree. It is sufficient that the witnesses knew and identified the defendant by his nickname. *Salgado*, 287 Ill. App. 3d at 445, 678 N.E.2d at 658; *Murillo*, 225 Ill. App. 3d at 294, 587 N.E.2d at 1205. Third, our review of the record indicates that defendant's nickname was used sparingly at trial. Finally, the State neither emphasized the nickname when it elicited testimony from witnesses nor used the nickname in its closing argument.

Accordingly, we do not find any abuse of discretion by the trial court in allowing the use of defendant's nickname or any prejudice to defendant arising therefrom.

## B. Violation of Single Subject Rule

■ Defendant next contends that Public Act 89—689 (Act) (Pub. Act 89—689, eff. December 31, 1996 (1996 Ill. Laws 3775)), through which the residual hearsay statute was enacted, violates the single subject rule (Ill. Const. 1970, art. IV, § 8(d)). Defendant contends that Public Act 89—689 violates the single subject rule because its subject is impermissibly broad and because some of the provisions of the Act are not naturally and logically connected to the proffered subject. He argues that because Public Act 89—689 is void under the single subject rule, the residual hearsay statute is also void. Defendant further contends that because Gordon's written statement was admitted into evidence under the residual hearsay statute, it was admitted in error and asks us to reverse his convictions and remand for retrial.

This court has recently considered the constitutionality of Public Act 89—689 under the single subject rule in *People v. Dixon*, 308 Ill. App. 3d 1008 (1999). Although defendant and the State dispute the exact subject of Public Act 89—689, we concluded in *Dixon* that the Act addresses the single subject of the criminal justice system. *Dixon*, 308 Ill. App. 3d at 1016. The subject of the "criminal justice system" encompasses substantive criminal law as well as the administration of

the criminal justice system. We also found that all 19 sections of Public Act 89—689 concern criminal law or the administration of criminal justice. Accordingly, we concluded that Public Act 89—689 does not violate the single subject rule.

We choose to adhere to our reasoning and conclusions in *Dixon*. We find that Public Act 89—689 does not violate the single subject rule and is not unconstitutional. Accordingly, we reject defendant's contention that the residual hearsay statute is void and that Gordon's statement was admitted in error.

## C. Guarantees of Trustworthiness and Notice

Defendant contends that even if the residual hearsay statute is not void, Gordon's written statement was admitted in violation of the confrontation clause and the residual hearsay statute because it lacked requisite guarantees of trustworthiness. Defendant further contends that the admission of Gordon's statement was in violation of section (b) of the residual hearsay statute because the State did not provide defendant sufficient notice of its intention to offer the statement at trial.

### 1. *Guarantees of Trustworthiness*

Defendant argues that Gordon's statement lacked the guarantees of trustworthiness required under both the confrontation clause and the residual hearsay statute.

■ The confrontation clause, made applicable to the states through the fourteenth amendment, provides, "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." U.S. Const., amend. VI. However, it is well settled that, under certain circumstances, a hearsay statement may be admitted even where the declarant is unavailable at trial for cross-examination without violating the confrontation clause. The United States Supreme Court most recently reiterated its framework for analyzing hearsay statements under the confrontation clause in *Lilly v. Virginia*, 527 U.S. 116, 144 L. Ed. 2d 117, 119 S. Ct. 1887 (1999). The Court stated:

> "[T]he veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when (1) 'the evidence falls within a firmly rooted hearsay exception' or (2) it contains 'particularized guarantees of trustworthiness' such that adversarial testing would be expected to add little, if anything, to the statements' reliability." *Lilly*, 527 U.S. at 124-25, 144 L. Ed. 2d at 127, 119 S. Ct. at 1894, quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980).

■■ In *Idaho v. Wright*, 497 U.S. 805, 817, 111 L. Ed. 2d 638, 653,

110 S. Ct. 3139, 3147 (1990), the Supreme Court held that residual hearsay statutes are not firmly rooted hearsay exceptions and statements sought to be admitted thereunder must be supported by particularized guarantees of trustworthiness. In *Lilly*, the Court held that "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule." *Lilly*, 527 U.S. at 134, 144 L. Ed. 2d at 133, 119 S. Ct. at 1899. Thus, under both *Wright* and *Lilly*, it is apparent that Gordon's statement must contain particularized guarantees of trustworthiness to satisfy the confrontation clause.

■ In *Wright*, the Court explained that "guarantees of trustworthiness" must be drawn from the totality of the circumstances surrounding the preparation of the statements. *Wright*, 497 U.S. at 820-21, 111 L. Ed. 2d at 655-56, 110 S. Ct. at 3149. The *Wright* Court declined to endorse a mechanical test for determining guarantees of trustworthiness and stated that courts have "considerable leeway in their consideration of appropriate factors." *Wright*, 497 U.S. at 822, 111 L. Ed. 2d at 656, 110 S. Ct. at 3150. However, the Court did specifically hold that corroborating evidence will not support a finding that a statement bears sufficient guarantees of trustworthiness. Rather, a statement must "possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Wright*, 497 U.S. at 822, 111 L. Ed. 2d at 657, 110 S. Ct. at 3150. In *Lilly*, the Court reaffirmed its rejection of the notion that corroborating evidence may support a finding that a statement bears particularized guarantees of trustworthiness. *Lilly*, 527 U.S. at 137-38, 144 L. Ed. 2d at 135, 119 S. Ct. at 1900.

■ Based upon our review of the totality of circumstances, we find that Gordon's statement contains sufficient guarantees of trustworthiness to satisfy the confrontation clause. The record reveals the following facts: (1) the statement was given in the presence of two police officers and Gordon's attorney, Hanken; (2) the statement was in writing and in a narrative form, thereby negating the possibility that the statement was in response to leading questions; (3) Hanken reviewed the statement with Gordon and the statement was signed by Gordon, Hanken, and both police officers; (4) Hanken advised Gordon to tell the truth; (5) Hanken testified that the statement was not given in exchange for the dismissal of the charges against Gordon; no *quid pro quo* was involved; (6) Gordon admitted to a crime in the statement; (7) Gordon implicated defendant, his best friend, in the statement; (8) Gordon did not recant his testimony; and (9) Gordon testified to facts within his knowledge or observation.

We are mindful that, in *Lilly*, the Supreme Court found that an

accomplice's confession inculpating a criminal defendant did not contain sufficient guarantees of trustworthiness, even where (1) the confession was corroborated by other evidence, (2) the declarant had been read his *Miranda* rights, (3) the confession was against the declarant's penal interest, and (4) no evidence showed an express promise of leniency in exchange for the declarant's statement. However, we find that Gordon's statement is distinguishable from the statement in *Lilly*. In holding that the statement in *Lilly* failed to contain sufficient guarantees of trustworthiness, the Court was persuaded by the fact that the declarant made the statement solely in the presence of governmental authorities, the declarant was responding to leading questions, and the declarant was under the influence of alcohol. Here, in contrast, Gordon was accompanied by his attorney, he was not responding to leading questions, and no evidence indicated that he was under the influence of alcohol or any other substance. These factors, together with the others we have discussed, convince us that Gordon's statement was sufficiently trustworthy to satisfy the confrontation clause.

■ We turn now to the residual hearsay statute. The residual hearsay statute provides that a statement not covered under any other hearsay exception may nevertheless be admissible if it has "equivalent circumstantial guarantees of trustworthiness." 725 ILCS 5/115—10.2(a) (West 1998). The factors relevant to the determination of trustworthiness is an issue of first impression for this court. In *People v. Brown*, 303 Ill. App. 3d 949, 961, 709 N.E.2d 609, 618 (1999), citing *Chambers v. Mississippi*, 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 312, 93 S. Ct. 1038, 1048-49 (1973), the first district held that in assessing trustworthiness under the residual hearsay statute, courts should consider, among other possible factors, whether (1) the statement was given spontaneously, (2) the statement was corroborated by other evidence, (3) the statement was self-incriminating and against the declarant's interest, and (4) an adequate opportunity to cross-examine the witness was given. The court clarified that while all of these factors need not exist, other assurances of the statement's trustworthiness must exist. A trial court must look to the totality of circumstances.

We agree with the *Brown* court that in assessing trustworthiness for purposes of the residual hearsay statute, we must consider the totality of circumstances. However, we also find that, as the State contends, not all of the *Chambers* criteria cited by the *Brown* court are applicable. First, it would be futile to consider whether a statement is corroborated by other evidence when such considerations are clearly prohibited for purposes of the confrontation clause. Second, the

determination of whether an opportunity to cross-examine existed is inapplicable because the residual hearsay statute only applies when the declarant is unavailable and, by definition, no opportunity to cross-examine exists.

Considering the totality of circumstances again, we find that the circumstances discussed above for purposes of the confrontation clause are also sufficient to satisfy the guarantees-of-trustworthiness test of the residual hearsay statute.

Defendant contends that Gordon's statement is not sufficiently trustworthy to satisfy either the confrontation clause or the residual hearsay statute because (1) it is inconsistent with Gordon's oral statement to Detective Ross on May 15, 1997; (2) it was given as a *quid pro quo* for dropping the charges against Gordon; (3) Gordon had a motive to lie because of his involvement; and (4) it was given over three months after the crime. However, the written and oral statements are, for the most part, consistent, and Gordon's attorney testified that the statement was not given as a *quid pro quo* for the dismissal of the charges against Gordon. Assuming Gordon did have a motive to lie, we find that the guarantees of trustworthiness we have already discussed sufficiently outweigh the risk that Gordon did, in fact, lie. Finally, in light of the facts of this case, three months was not an unreasonable passage of time.

We conclude that the trial court did not abuse its discretion in admitting Gordon's statement into evidence.

## 2. *Notice*

Section (b) of the residual hearsay statute provides:

"A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement ***." 725 ILCS 5/115—10.2 (West 1998).

Defendant contends initially that he did not have sufficient notice of the State's intention to offer Gordon's statement into evidence prior *to trial*. However, the statute specifically states that notice must be given before the "trial or hearing." 725 ILCS 5/115—10.2 (West 1998). The hearing to which the statute refers is the admissibility hearing, which can occur, of course, during a trial.

The notice provision of the residual hearsay statute, like rules related to discovery, was designed to protect against unfair surprise and inadequate preparation. It is well settled that even where a violation of discovery rules has arguably occurred, the admission of evidence is not reversible error where no prejudice is shown. *People v. Robinson*, 157 Ill. 2d 68, 78, 623 N.E.2d 352, 357 (1993). The same

logic applies to the notice requirements of the residual hearsay statute.

■ Even if the State arguably violated the notice requirements of the statute, defendant has failed to show how he was unfairly prejudiced. Defendant was aware that Gordon was listed as a potential witness for the State as early as August 29, 1997. Defendant's counsel acknowledged that he was in possession of Gordon's statement before the trial through pretrial discovery. Defendant's counsel acknowledged during trial that Gordon had been difficult to find throughout the proceeding. When Gordon was found by the State, defendant's counsel went as far as saying, "I want to compliment the State on its diligence in locating [Gordon]. We were unable to do so." In light of the circumstances, it is difficult to understand how defendant could have been surprised that the State might offer Gordon's statement into evidence. Further, the State informed defendant's counsel of its intention to use Gordon's statement as soon as the State learned that Gordon was going to invoke his fifth amendment privileges. Defendant has failed to indicate what more he could, or would, have done had he been given additional notice.

Having found no prejudice to defendant resulting from the State's notice of its intention to offer Gordon's statement, we find no reversible error.

Even if the trial court abused its discretion in admitting Gordon's statement due to insufficient trustworthiness or lack of sufficient notice, we find that the error was harmless beyond a reasonable doubt. The record contains sufficient evidence to support defendant's conviction even absent Gordon's statement.

## III. CONCLUSION

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.